**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

ANTHONY MERTSON and MICHAEL SCHIRANO, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ROUTE APP INC.,

Defendant.

Case No. 3:26-cv-1172 (ECC/ML)

Honorable Elizabeth Cherly Coombe, U.S.D.J.
Honorable Miroslav Lovric, U.S.M.J.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ROUTE APP INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................1

II. BACKGROUND ....................................................................................................3

III. ARGUMENT ....................................................................................................5

A. Plaintiffs Lack Article III Standing....................................................................................................5

1. Plaintiffs Cannot Establish a Concrete Injury Fairly Traceable to Route. ....................................................................................................6

2. Plaintiffs Lack Standing to Assert Claims Based on Purchases on Merchant Websites that They Never Visited. ......................................12

B. Plaintiffs Fail to State a Claim Under GBL §§ 349 and 350. ...............................13

1. The Alleged Conduct Concerning Route Is Not Consumer-Oriented. ....................................................................................................14

2. Plaintiffs Do Not Allege a Misleading Act by Route. ...............................15

C. Plaintiffs' Unjust Enrichment Claim Fails. ....................................................19

1. Plaintiffs' Unjust Enrichment Claims Are Duplicative of and Fail with Their GBL Claims. ....................................................19

2. The Nationwide Unjust Enrichment Class Claim Fails. ............................21

D. Alternatively, the Court Should Strike Paragraphs 33 through 38 of the Complaint, Including Plaintiffs' ROSCA and California Drip-Pricing References. ....................................................................................................23

IV. CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................13, 14, 22

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)....................21

*Aurecchione v. Schoolman Transp. Sys.*,
426 F.3d 635 (2d Cir. 2005)....................5

*Baldeo v. Airbnb, Inc.*,
No. 20-CV-7771, 2023 WL 7689652, *3 (S.D.N.Y. 2023), *aff'd*, No. 24-1238-cv, 2025 WL 3152716 (2d Cir. 2025)....................15

*Banco San Juan Internacional, Inc. v. Fed. Rsrv. Bank of New York*,
176 F.4th 163 (2d Cir. 2026)....................5, 12

*Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*,
No. 03 Civ. 15, 2007 WL 1687044 (S.D.N.Y. June 11, 2007)....................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................13, 14

*Carovillano v. Sirius XM Radio Inc.*,
715 F. Supp. 3d 562 (S.D.N.Y. 2024)....................14

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016)....................5, 12

*CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*,
352 So. 3d 357 (Fla. 3d Dist. Ct. App. 2022)....................21

*Chimienti v. Wendy's Int'l, LLC*,
698 F. Supp. 3d 549 (E.D.N.Y. 2023)....................17, 20

*Cline v. TouchTunes Music Corp.*,
211 F. Supp. 3d 628 (S.D.N.Y. 2016)....................17

*Corsello v. Verizon New York, Inc.*,
18 N.Y.3d 777 (2012)....................19

*Crosby v. Stew Leonard's Yonkers LLC*,
695 F. Supp. 3d 551 (S.D.N.Y. 2023)....................23

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)....................25

*Deutsche Bank AG v. Vik*,
40 N.Y.S.3d 23 (App. Div. 1st Dep't 2016)....................23

*DiMuro v. Clinique Labs., LLC*,
572 F. App'x 27 (2d Cir. 2014)....................13

*Dunbar v. Seger-Thomschitz*,
638 F. Supp. 2d 659 (E.D. La. 2009)....................22

*Dunn v. Rockwell*,
689 S.E.2d 255 (W. Va. 2009)....................22

*Elkind v. Revlon Consumer Prods. Corp.*,
No. 14-CV-2484, 2015 WL 2344134 (E.D.N.Y. 2015)....................12

*Elledge v. Friberg-Cooper Water Supply Corp*.,
240 S.W.3d 869 (Tex. 2007)....................22

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)....................17

*Georgia Malone & Co. v. Rieder*,
19 N.Y.3d 511 (2012)....................20

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002)....................14

*Grossman v. GEICO Cas. Co*.,
No. 21-2789, 2022 WL 1656593 (2d Cir. May 25, 2022)....................16

*Grynberg v. Eni S.p.A*.,
No. 06 Civ. 6495, 2007 WL 2584727 (S.D.N.Y. Sept. 5, 2007)....................23

*Hart v. BHH, LLC*,
No. 15CV4804, 2016 WL 2642228 (S.D.N.Y. 2016)....................12

*Harty v. West Point Realty, Inc*.,
28 F.4th 435 (2d Cir. 2022)....................8

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
832 S.W.2d 39 (Tex. 1992)....................22

*Himmelstein v. Matthew Bender & Co.*,
172 A.D.3d 405 (1st Dept. 2019), *aff'd*, 37 N.Y.3d 169 (2021)....................16

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*,
37 N.Y.3d 169 (2021) ....................13, 15, 24

*Kent v. AVCO Corp.*,
815 F. Supp. 67 (D. Conn. 1992) ....................24

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976) ....................23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................5, 6

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y.3d 173 (2011) ....................19, 20

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018) ....................17

*Maya NY, LLC v. Hagler*,
965 N.Y.S.2d 475 (App. Div. 1st Dep't 2013) ....................23

*Melchior v. New Line Prods., Inc.*,
106 Cal. App. 4th 779 (2003) ....................21

*Miami Prods. & Chem. Co. v. Olin Corp.*,
546 F. Supp. 3d 223 (W.D.N.Y. 2021) ....................21

*Morales v. SportsEngine, Inc.*,
No. 24-CV-2971, 2025 WL 2662134 (S.D.N.Y. Sept. 17, 2025), *appeal withdrawn*, No. 25-2499, 2026 WL 105037 (2d Cir. Jan. 9, 2026) ....................20

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012) ....................12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
85 N.Y.2d 20 (1995) ....................15

*Pelman v. McDonald's Corp.*,
237 F. Supp. 2d 512 (S.D.N.Y. 2003) ....................15

*Pierce v. Fordham Univ., Inc.*,
No. 15-CV-4589, 2016 WL 3093994 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) ....................7

*Ramos v. EyeBuyDirect*,
No. 25-CV-00539, 2025 WL 2633103 (C.D. Cal. Aug. 27, 2025) ....................18, 19, 21

*Reclaimant Corp. v. Deutsch*,
211 A.3d 976 (Conn. 2019) ....................22

*Reit v. Yelp! Inc.*,
907 N.Y.S.2d 411 (Sup. Ct. 2010)....................15

*Shahzad v. Meyers*,
No. 95 Civ. 6196, 1997 WL 47817 (S.D.N.Y. Feb. 6, 1997) ....................24

*Sokoloff v. Town Sports Int'l Inc.*,
6 A.D.3d 185, 778 N.Y.S.2d 9 (2004) ....................21

*Sperry v. Crompton Corp.*,
8 N.Y.3d 204 (2007) ....................20

*Thursday Boot Co. v. DNVB, Inc.*,
No. 1:25-cv-03076-GHW-RFT (S.D.N.Y. Jan. 26, 2026) (slip op. ) ....................15

*In re Unite Here Data Sec. Incident Litig.*,
740 F. Supp. 3d 364 (S.D.N.Y. 2024)....................16

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
215 F.3d 247 (2d Cir. 2000)....................2, 5

**Statutes**

15 U.S.C. § 8403....................25

**Other Authorities**

Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*,
Wall St. J. (Dec. 25, 2024, 5:30 AM ET) ....................3

## I. INTRODUCTION

Defendant Route App Inc. provides post-purchase package protection services that retailers may offer to their customers. Plaintiffs Mertson and Schirano allege that this service was deceptively added to their checkout carts on two different third-party retailers' websites (7OHPLUS and Perfect Bar). Yet, Plaintiffs' entire theory that Route, rather than these third-party retailers, is responsible for the alleged deception relies on a single conclusory allegation pleaded only "on information and belief": that Route "designs the interface presented by merchants to consumers regarding" the package protection. Compl. ¶ 14. That allegation is not merely unsupported; it is contradicted by facts alleged by Plaintiffs.[1] Plaintiffs' theory rests on a fundamental mischaracterization of Route's role and fails as a result.

Route is not an online retailer. It does not sell its package protection services directly to consumers through its own website, and it does not control how online retailers present their services to consumers. The retailers from which Plaintiffs made their purchases, 7OHPLUS and Perfect Bar, control how the package protection offering is marketed and displayed to their customers on their websites, just as they control how their own products are depicted, described, and priced. Plaintiffs never plausibly allege otherwise. And Plaintiffs' own pleading concedes as much: it alleges that Route only "encourages" retailers to use a default opt-out setting. Compl. ¶ 15. An allegation that Route "encourages" a retailer to retain a particular setting belies any suggestion that Route controls the appearance of its offering on retailers' websites; the retailer remains free to present Route's package protection as it chooses. Plaintiffs further concede that

[1] That allegation is also contradicted in the allegations asserted in dozens of complaints filed by Plaintiffs' counsel in this matter naming online retailers as defendants based on nearly identical allegations related to Route's package protection. *See* Decl. of Molly Melcher ("Melcher Decl.") at ¶¶ 8-9. In these other cases, Plaintiffs' counsel acknowledge the obvious—that it is the online retailers, and not Route, that control their website interfaces. *Id.*

Route's service appears on "the e-commerce retailer's checkout page," and Plaintiffs' allegations depict Route explaining to retailers that the opt-in setting "is an option" that they may have "changed." *Id.* ¶¶ 15 (see image), 24. Plaintiffs also acknowledge that retailers do not use a universal description for Route's service: 7OHPLUS calls it "Shipping Protection," while Perfect Bar calls it "Package Protection." *Id.* ¶¶ 15, 20, 40, 44.

Another threshold failure of the Complaint is that Plaintiffs do not include, or even describe, the checkout flows they each experienced when they made their purchases from the websites at issue. The appearances of the websites, including the marketing and description of Route's package protection services, have changed over time, and Plaintiffs' failure to include any depiction of the websites at the time they made their purchases should doom their deception claims.

Plaintiffs' glaring omission was likely intentional as the checkout flows on the two retailer websites identified in the Complaint, as captured in June 2026 (when the Complaint was filed), illustrate that retailers and not Route control the presentation of Route's services to consumers on retailer websites.[2] For example, 7OHPLUS's cart page discloses that the shopper's "order is protected," without identifying Route by name, and asks the shopper to choose between "CHECK OUT" and "Check out without Coverage." *See* Melcher Decl. ¶ 2, Ex. 1. Perfect Bar, by comparison, uses a different flow on the penultimate checkout page. Consumers select either "CONTINUE TO CHECKOUT" (with the package protection fee disclosed on the button) or "CHECKOUT WITHOUT PROTECTION." *See id.* ¶ 3, Ex. 2. These differences exist because Route does not control its retailers' e-commerce websites. A retailer that builds its own website integrates Route's services through a data connection for which Route supplies no visual interface,

[2] The Court may consider these flows on the 12(b)(1) motion. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

and a retailer that uses a third-party platform such as Shopify decides—through its own choice of theme, configuration, and code, amongst other elements—whether and how Route's services appear. *See* Declaration of Adam Casper ("Casper Decl.") ¶¶ 3-11.

The Court should dismiss Plaintiffs' Complaint in its entirety. First, Plaintiffs lack Article III standing because they cannot trace any cognizable injury to conduct *by* Route and because they cannot represent a nationwide class of purchasers from retailers they never visited. The Court's inquiry can end there. Second, even if the Court wades into Plaintiffs' claims, Plaintiffs fail to state a claim under Rule 12(b)(6) because Route's alleged conduct is not consumer-oriented and because Plaintiffs never saw the fee they allege was a misleading misrepresentation. Third, the Plaintiffs' unjust enrichment claims must be dismissed because they rely on the same conduct as their GBL §§ 349 and 350 claims, and because Plaintiffs plead neither a relationship with Route nor any facts making Route's retention of the fees unjust. Fourth, even if Plaintiffs' individual claims could survive, no named Plaintiff has standing to assert unjust enrichment claims under the laws of the forty-nine other states on behalf of a nationwide class. Finally, the material differences among those states' laws make nationwide treatment unmanageable in any event.

## II. BACKGROUND

Route offers optional package protection services that online retail merchants can offer to their consumers purchasing items on their websites. As the Wall Street Journal article cited by Plaintiffs explains, "Lost deliveries, shipping delays and theft on the front porch have become such growing problems that . . . [t]ens of thousands of online retailers now offer [a package protection] service for a few dollars per order." *See* Compl. ¶ 16 (citing Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*, Wall St. J. (Dec. 25, 2024, 5:30 AM ET), https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?). As the article further explains, these services are offered by companies, like Route, that partner with

online merchants and "promise to make customers whole" for "delays, damages and theft." *Id.*

Route offers its package protection service to online retailers who may then offer it to their consumers. Compl. ¶ 11. Plaintiffs allege that the retailers are provided with an "interface" to install on their websites. *Id.* ¶¶ 14-16. Different retailers present Route's services differently—with different names, placements, and checkout designs. *See id.* ¶¶ 23, 25, 40, 44.

7OHPLUS and Perfect Bar are non-party online retailers that offer customers the option to purchase Route's package protection services on their websites. *Id.* ¶¶ 39, 43. Both Plaintiffs allege that Route's service appeared in their carts at checkout and that they "did not know the charge existed or could be removed prior to [their] purchase." *Id.* ¶¶ 41, 45. Mertson alleges he paid $2.95 for "Shipping Protection by Route" (or less after applying a discount code), while Schirano alleges he paid $1.55 for "Route Package Protection." *Id.* ¶¶ 40, 44. It is telling that neither Plaintiff included a screenshot or description of the online retailers' websites or checkout page that they claim to have viewed during their purchase experience, which is problematic as the online retailers change the appearances of the websites, including the presentation of Route package protection, over time.[3] Plaintiffs do not allege that Route controlled the checkout design or presentation of package protection on these websites, made any public-facing representation about the service, failed to provide the protection purchased, caused a lost or damaged package, denied a claim, or refused a refund request. These omissions defeat Plaintiffs' claims.

[3] In fact, Route's records indicate that, at the time of Plaintiff Mertson's purchase from 7OHPLUS, the retailer presented Route's package protection fee in a similar manner to the flow from June 2026 described above: with the user selecting whether to check out with package protection on the cart page. *See* Casper Decl. ¶ 12. This conflicts with Plaintiff's allegations that the fee was automatically added to his cart (Compl. ¶ 40) and underscores that Plaintiffs' omission of any depiction of the websites is problematic to their claims.

## III. ARGUMENT

### A. Plaintiffs Lack Article III Standing.

A motion pursuant to Rule 12(b)(1) tests whether the Court has subject-matter jurisdiction. Once jurisdiction is challenged, the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 638 (2d Cir. 2005). A Rule 12(b)(1) motion may be either facial, resting solely on the allegations of the complaint, or fact-based, relying on evidence beyond the pleadings. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). Because standing is a component of subject-matter jurisdiction, a challenge to a plaintiff's standing is properly brought under Rule 12(b)(1). *See id.* at 56; *see also Banco San Juan Internacional, Inc. v. Fed. Rsrv. Bank of New York*, 176 F.4th 163, 177, 184 (2d Cir. 2026). The "irreducible constitutional minimum of standing" consists of three elements: the plaintiff must have (1) suffered an injury (2) that is fairly traceable to the challenged conduct of the defendant (traceability), and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

To satisfy traceability, a plaintiff must show the injury is "fairly traceable" to the defendant's conduct, not to "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation omitted). "If the alleged injury results from the 'independent decisions' of a third party, that would 'break the chain of causation . . .' for purposes of establishing standing." *Banco San Juan Internacional, Inc.*, 176 F.4th at 184 (citations omitted).

To resolve jurisdictional disputes, the court may refer to evidence outside the pleadings, such as affidavits. *Zappia*, 215 F.3d at 253. A plaintiff must furnish evidence to satisfy their burden in asserting subject matter jurisdiction. Where a defendant mounts a fact-based challenge under Rule 12(b)(1) by offering evidence beyond the pleadings, the plaintiff cannot rest on the complaint's allegations if that evidence contradicts them. *Carter*, 822 F.3d at 57 (plaintiffs facing

a fact-based Rule 12(b)(1) motion "will need to come forward with evidence of their own to controvert that presented by the defendant").

**1. Plaintiffs Cannot Establish a Concrete Injury Fairly Traceable to Route.**

Plaintiffs' own allegations break the chain of causation required to establish standing. Plaintiffs describe conduct by third-party retailers 7OHPLUS and Perfect Bar but seek to impose liability on Route for their actions. As outlined above, Route provides a post-purchase service that online retailers can offer to their customers; those retailers independently decide how Route's package protection services are presented for purchase on their own website checkout pages, including whether the option is pre-selected. Compl. ¶¶ 11, 13, 15, 24. Plaintiffs' allegations confirm that online retailers, not Route, design and control their own websites: Route's service offering appears on "the e-commerce retailer's checkout page," *id.* ¶¶ 23-24, and different retailers present the same Route service with different names, placements, and disclosures. *Id.* ¶¶ 23, 25, 40, 44. Plaintiffs never plausibly allege that Route controlled the representations, disclosures, or checkout flow that supposedly caused Plaintiffs' purported injuries. Nor could they: Route does not control those aspects of its retailers' websites. Casper Decl. ¶¶ 4-10. Plaintiffs transacted with independent online retailers, not Route, and the variation in how retailers present Route's service (*see* Melcher Decl. ¶¶ 2-6, Exs. 1-5) confirms that the challenged presentation is the product of retailer decisions and not Route's conduct. An injury resulting from "the independent action of some third party not before the court" is insufficient for standing. *Lujan*, 504 U.S. at 560 (citation omitted).

Plaintiffs' chain of causation to Route rests on a single allegation: that "[o]n information and belief, Route designs the interface presented by merchants to consumers," including the name, timing, and pre-selection of purchasing Route's service. Compl. ¶ 14. But Plaintiffs' own

allegations, including a screenshot reproduced in the body of the Complaint, refutes that allegation as it shows Route advising merchants that the pre-checked default is an option that retailers can change. *Id.* ¶ 15. Where a plaintiff's "own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589, 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) (quoting *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-CV-1777, 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011)). The conclusory information-and-belief assertion cannot supply the traceable conduct that standing requires, especially in light of contradictory allegations throughout the Complaint.

The allegation that Route "directs e-commerce retailers who use its services to install a widget on its website" that "adds a hidden, pre-selected box or toggle" does not change this analysis. Compl. ¶ 13. At most, that allegation describes a configurable default that Route makes available to retailers—not a fixed presentation that retailers are powerless to alter. Plaintiffs' own allegations confirm that retailers retain and exercise that choice: Route "encourages" retailers to retain the "default" (*id.* ¶ 15), and the retailers Plaintiffs used have configured their checkout flow differently from one another. *See* Melcher Decl. ¶¶ 2-6, Exs. 1-5.

Nor do Plaintiffs cure this traceability defect by invoking Route's supposed awareness. Pled only on "information and belief," Plaintiffs allege that Route was "aware" its default would cause most consumers to "unknowingly purchase" the protection service (Compl. ¶ 17), and that Route "was or should have been aware" consumers would be deceived. *Id.* ¶ 29. But they supply no supporting facts about what Route purportedly knew, when, or how—and both describe awareness of retailer-controlled checkout settings, not conduct fairly traceable to Route.

Route's service is presented in fundamentally different ways across retailers—different

names, placements, opt-in mechanisms, disclosures, and prices. The variation in retailer-controlled checkout settings is significant. For example, one merchant, Roller Rabbit, labels the service "Shipping Protection" and presents it as an unchecked box on the checkout page under the shipping address fields (Figure 1 below).[4] *See* Melcher Decl. ¶ 4, Ex. 3. Another merchant, Farmgirl Flowers, uses the label "Package Protection" and displays it in a pink "RECOMMENDED" box with a coverage description (Figure 2 below). Melcher Decl. ¶ 5, Ex. 4. Killstar uses an unchecked box with the label "Shipping Protection" and includes a description of the service under the order total (Figure 3 below). Melcher Decl. ¶ 6, Ex. 5.




**Figure 1.** *Roller Rabbit presents "Shipping Protection" by Route as an unchecked line item on the payment page, below the shipping address.*

[4] Extrinsic evidence is properly considered on a Rule 12(b)(1) motion where it "contradicts the material allegations" of the complaint and courts "have suggested that it would be error for the district court to disregard that extrinsic evidence." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022).




**Figure 2.** *Farmgirl Flowers presents "Package Protection" by Route in a pink "RECOMMENDED" box within the Order Summary, with a coverage description and price.*




**Figure 3.** *Killstar presents "Shipping Protection" by Route and uses a checkbox with a description of the service along with the price below the order total.*

The merchant websites at issue in the Complaint, 7OHPLUS and Perfect Bar, further contradict the Complaint's purported traceability allegations. When a consumer adds a product to their cart, they are presented with differing presentations of Route's package protection option on the penultimate checkout page. *See* Melcher Decl. ¶¶ 2-3, Exs. 1-2. The two designs diverge again later in the flows of the checkout pages. *Id.* On 7OHPLUS's website, the retailer's presentation of Route's service remains inside the active checkout form itself: the same checkbox sits alongside the Contact and Express Checkout fields on the final payment page, still checked and still clickable. *Id.* at Ex. 1. On Perfect Bar's website, by the same point in the checkout flow, the retailer's presentation of Route's service has disappeared from the checkout form entirely—it appears nowhere on the equivalent page—and resurfaces only as a line item in the order-summary

sidebar, the choice having already been locked in one screen earlier. *Id.* at Ex. 2. These differences in how the choice is presented, whether it remains editable, and where in the flow it is locked in are retailer-specific interface choices. *See id.* Exs. 1-2.

These differences and control by the retailer are confirmed by the integration architecture itself. Retailers integrate Route's services into their online stores in one of two principal ways, depending on how the retailer has built its e-commerce website: through Route's application programming interface ("API"), or through a third-party e-commerce platform such as Shopify. Casper Decl. ¶ 3. Neither path gives Route control over what a retailer's customers see when they decide whether to purchase Route's services.

Retailers that build and operate their own e-commerce websites integrate Route through the API. *Id.* ¶ 4. For merchants that integrate Route using the API, Route does not implement any part of the merchant's website or checkout. *Id.* Route may make available to these merchants an embeddable code snippet and design guidelines for presenting Route's package protection offering, but the merchant decides whether to use them, implements them itself, and controls how and where Route's services are presented on its website and checkout. *Id.* Route's role is limited to exchanging data between the merchant's systems and Route's back-end systems and then providing Route's service to the merchant's customers who choose to purchase it. *Id.*

Retailers that use Shopify, a third-party platform that Route neither owns nor operates, make their own choices, within the options Shopify permits, at every layer of how Route's services are presented. *Id.* ¶ 5. *First*, the retailer must select the Route Widget from among the many apps Shopify makes available and must enable it using a toggle in the retailer's own Shopify administrative account. *Id.*, Ex. 1. Since approximately August 2025, merchants can enable or disable the Route Widget via a toggle in Shopify's app-embeds panel. *Id.* Before then, the Route

Widget was added to a merchant's Shopify storefront through a script inserted into the merchant's theme code, which Route installed with the merchant's review and approval. *Id.* Under that setup, the merchant could disable the Route Widget at any time by editing its theme, disabling it in the Route Merchant Portal, uninstalling the Route app, or asking Route to disable it. *Id.*

*Second*, the overall appearance of the storefront—its layout, typography, colors, spacing, and behavior on different devices—is determined by the theme the retailer selects, and every element on the storefront, including the Route Widget, takes on the characteristics of that theme. *Id.* ¶¶ 6-7. Shopify's Theme Store alone offers hundreds of themes; retailers may purchase themes from third-party designers, commission a custom theme, or upload their own, and may publish a different theme at any time without Route's involvement. *Id.*, Exs. 2-4. *Third*, within any theme, the retailer can add, remove, reorder, and hide sections of each page and adjust fonts, colors, placement, and navigation, so that two retailers using the same theme will not necessarily present the same storefront. *Id.* ¶ 8, Ex. 4 *Fourth*, the retailer configures the Route Widget itself through a settings panel, selecting the widget's button layout and the elements of the retailer's own page to which the widget attaches, and may enter custom code that changes essentially any visual aspect of the widget, including whether it is displayed at all. *Id.* ¶ 9, Ex. 5. *Fifth*, the retailer has full access to its theme's source code and may make changes to it allowing the retailer to control, where the widget is placed, how it is styled, when it appears, and how it behaves, independent of the settings panel. *Id.* ¶ 10. Each of these choices is controlled by the retailer, made without Route's involvement, and may be changed at any time without notice to, or any action by, Route. *Id.* ¶¶ 6, 11.

The path that the retailer selects determines how Route's services appear to the retailer's customers on that retailer's website. That is fatal to Plaintiffs' traceability theory, which depends

entirely on the premise that Route "designs the interface presented by merchants to consumers." Compl. ¶ 14. Thus, Plaintiffs' alleged injury as to how Route's service offering is presented is not fairly traceable to Route because it turns on choices made by individual retailers. *Banco San Juan Internacional*, 176 F.4th at 184; *see also Carter*, 822 F.3d at 55-56 (Article III standing requires the injury to be "fairly traceable" to that defendant) (citation modified).

**2. Plaintiffs Lack Standing to Assert Claims Based on Purchases on Merchant Websites that They Never Visited.**

Even if the named Plaintiffs could establish individual standing (they cannot), they lack standing to represent a putative class of consumers who purchased from online retailers other than 7OHPLUS (Mertson) and Perfect Bar (Schirano). A class representative may have standing where they "(1) personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant," and (2) "that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (citation modified).

A class representative may assert claims based on products he did not buy only when those products raise the same set of concerns, such as whether they are sufficiently similar to the product he purchased; that requirement is not met here because, as outlined above, the challenged presentations differ from merchant to merchant. *See Hart v. BHH, LLC*, No. 15CV4804, 2016 WL 2642228, at *3-4 (S.D.N.Y. 2016) (holding that a purchaser of pest repellers lacked standing to challenge animal repellers because the two product lines served different purposes, operated differently, and targeted different pests, so the claims did not raise nearly identical concerns); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *4 (E.D.N.Y. 2015) (holding that plaintiffs lacked standing to assert claims arising from a product they did not

purchase); *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (affirming dismissal for lack of standing to challenge unpurchased products where differing ingredients and advertising claims required product-specific proof of falsity).

Here, the manner in which retailers implement Route's service varies so materially that no named plaintiff's experience is representative of the putative class. Those differences are not cosmetic; they are material variations in how the service is identified, offered, explained, and selected by the online retailer. *See, e.g.*, *supra* Section III.A.1. For those reasons, Plaintiffs lack standing to challenge representations or practices appearing on websites they never visited.

Mertson purchased only from 7OHPLUS, and Schirano purchased only from Perfect Bar. They do not allege that they purchased Route's package protection from any other online retailer, visited any other online retailer websites, or were exposed to any other online retailer's checkout process. Plaintiffs do not allege that all online retailers made the same representations, employed the same checkout flow, or used the same disclosures. Nor can they. Their attempt to represent purchasers of Route's services from every retailer fails as a matter of law.

**B. Plaintiffs Fail to State a Claim Under GBL §§ 349 and 350.**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts well-pled factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To state a claim under GBL § 349 or § 350, a plaintiff must plausibly allege that the defendant engaged in (1) consumer-oriented conduct that was (2) materially misleading and that (3) caused the plaintiff injury. *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v.*

*Matthew Bender & Co.*, 37 N.Y.3d 169, 176 (2021). The § 350 standard is related to false advertising but is "otherwise identical" to § 349, so the two claims rise and fall together. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002); *accord Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 573-74 (S.D.N.Y. 2024) (treating the two sections as coextensive). Plaintiffs' claims fail at every element.

**1. The Alleged Conduct Concerning Route Is Not Consumer-Oriented.**

Plaintiffs cannot satisfy the consumer-oriented requirement of each of their GBL claims as there are no plausible facts establishing any consumer-oriented conduct by Route. Instead, Plaintiffs allege that Route provides a software widget to online retailers, who independently decide whether and how to deploy it on their websites. Compl. ¶¶ 13-15. Plaintiffs do not adequately allege that Route operates or controls either of the retail websites where Plaintiffs made their alleged purchases. Likewise, Plaintiffs do not allege that Route determined how to present the package protection service to each of them on the two different retail websites where they made their alleged purchases. *See supra* Section III.A. Instead, Plaintiffs allege that Route's accused conduct is its business-to-business delivery of a configurable widget to these two retailers to potentially use on their websites—activity that is not consumer-oriented.

Plaintiffs' conclusory assertion that Route's "policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who made online purchases from Route," (Compl. ¶ 67), does not save their claim. This is precisely the kind of "formulaic recitation of the elements of a cause of action" that *Iqbal* and *Twombly* hold insufficient; it is not accompanied by any factual allegation that Route—as opposed to the retailers who present Route's package protection services on their websites—directed conduct at consumers. *Iqbal*, 556 U.S. at 678 (citation omitted). It is also contradicted by Plaintiffs' own allegations. Plaintiffs each allege that they made their purchases "from" the two online retailers—7OHPLUS and Perfect Bar.

Compl. ¶¶ 39-40, 43-44. Those retailers collected Plaintiffs' fees. *Id.* Plaintiffs do not allege any facts supporting their conclusion that they purchased Route's services directly from Route.

Courts routinely dismiss GBL claims where the defendant's conduct is directed at businesses rather than consumers. *See Reit v. Yelp! Inc.*, 907 N.Y.S.2d 411, 415 (Sup. Ct. 2010) (business conduct directed at other businesses is not consumer-oriented under § 349); *Baldeo v. Airbnb, Inc.*, No. 20-CV-7771, 2023 WL 7689652, at *3 (S.D.N.Y. 2023), *aff'd*, No. 24-1238-cv, 2025 WL 3152716 (2d Cir. 2025) (finding no § 349 liability where there was no direct transactional relationship between plaintiff and Airbnb and the challenged conduct flowed through independent third-party intermediaries). Plaintiffs fail to establish any direct consumer facing conduct between Route and Plaintiffs at the time Plaintiffs made their purchases. Route's alleged conduct—providing a post-purchase service for retailers to offer on their websites—is quintessentially business-to-business activity. The consumer-facing conduct (presenting the service for purchase, deciding where and how it is disclosed, choosing whether to pre-check a box, and charging consumers for the service) is performed by the retailers. Plaintiffs' claims thus fail and must be dismissed.

### 2. Plaintiffs Do Not Allege a Misleading Act by Route.

Even assuming Route's conduct is consumer-oriented (it is not), Plaintiffs identify no materially misleading representation made to them by Route that caused their alleged injury as required to state a GBL claim. Whether conduct is materially misleading is judged objectively—i.e., whether it is likely to mislead a reasonable consumer acting reasonably under the circumstances. *See Himmelstein*, 37 N.Y.3d at 178.[5]

[5] Plaintiffs do not plead an omission-based claim. An omission is actionable only if the defendant alone possessed material information not reasonably available to consumers. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995); *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003). Plaintiffs allege that their GBL

As a threshold matter, Plaintiffs' claims fail because Plaintiffs concede they did not see the protection service offers at all, claiming they "did not know the charge existed or could be removed prior to [their] purchase." Compl. ¶¶ 41, 45. A plaintiff who never encountered a representation cannot have been misled and injured by it. *Grossman v. GEICO Cas. Co*., No. 21-2789, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022) (dismissing GBL §§ 349 and 350 claims because the plaintiff did not allege that he ever reviewed the alleged misleading advertising); *Himmelstein v. Matthew Bender & Co.*, 172 A.D.3d 405, 406 (1st Dept. 2019), *aff'd*, 37 N.Y.3d 169 (2021) (dismissing GBL claims brought by plaintiffs who "fail[ed] to allege ... [they] ever saw the allegedly deceptive representations that purportedly harmed them"); *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 386-87 (S.D.N.Y. 2024) (dismissing claims where plaintiffs never alleged they saw or relied on the challenged statement). In fact, faced with nearly identical allegations written by the same law firm, the Court in *Cantore v. Route App, Inc.*, No. 1:25-cv-04677, (N.D. Ill. Oct. 7, 2026), dismissed all of Plaintiffs' claims based on affirmative representations: "Because Plaintiffs have clarified that they did not see, hear, or otherwise rely on Route's widget's design or name (i.e., shipping or package protection), the Court dismisses Plaintiff Conley's UCL, FAL, and CLRA claims, and Plaintiff Cantore's ICFA claim insofar as it depends on Route's affirmative representations." Melcher Decl. Ex. 6 at 3. That court also dismissed the unjust enrichment claims predicated on the affirmative misrepresentation theory. *Id.*

---

claims are predicated on "policies and practices" and "advertising" that was "misleading." Compl. ¶¶ 68, 75. They identify no material fact that Route alone possessed and failed to disclose—the service's existence, amount, and optionality all appeared on the retailer's website. *Cf. Thursday Boot Co. v. DNVB, Inc.*, No. 1:25-cv-03076-GHW-RFT (S.D.N.Y. Jan. 26, 2026) (slip op. at 10-11) (denying dismissal where the retailer allegedly failed to disclose that UPS already covered lost or damaged shipments—the kind of specific, undisclosed fact absent here).

at 4. Here, too, Plaintiffs affirmatively concede that they never saw the design they allege is misleading, which dooms their claims. Compl. ¶¶ 41, 45.

Even if Plaintiffs had seen a representation they claim is misleading, they fail to plead that a reasonable consumer would likely be misled by it. Materiality under GBL §§ 349 and 350 turns on a context-specific inquiry into whether a reasonable consumer, viewing the representation in context, would likely be misled, which requires the court to consider the challenged representation "as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018); *see Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial") (citation modified). That inquiry is impossible here because the Complaint does not adequately allege what either checkout screen looked like, where the protection option appeared on the page, whether it was presented as a pre-checked box, an unchecked box, or a two-button choice, what price or description accompanied it, what disclaimers or qualifying language surrounded it, or anything about how the option was presented to the named Plaintiffs at the point of sale. Plaintiffs neither attach a screenshot of either transaction nor describe any webpage. Because it is Plaintiffs' burden to plead the context that makes a representation plausibly misleading, the total absence of any allegations about the Plaintiffs' point-of-sale experience is fatal to their GBL claims. *Chimienti v. Wendy's Int'l, LLC*, 698 F. Supp. 3d 549, 557 (E.D.N.Y. 2023) ("Courts within the Second Circuit therefore regularly dismiss GBL claims brought by plaintiffs who did not allege that they ever saw the advertisements that they claimed were misleading before purchasing the advertised products from defendants."); *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 637 (S.D.N.Y. 2016) (dismissing § 350 claim where the complaint "fail[ed] to mention even a single specific advertisement, misleading or otherwise").

Additionally, Plaintiffs' conclusory "misleading conduct" allegations do not save the Complaint. They assert that the design of the checkout flow, including where the option appears and whether it defaults to opt out, is misleading. Compl. ¶¶ 3, 13-14, 24. As discussed above, these design choices are made by retailers. At best, Plaintiffs appear to allege that, because the option to purchase Route's protection service *can* default to an opt-out, then it is misleading. Even then, Plaintiffs have not alleged that an opt-out flow deceives the reasonable consumer. An opt-out design is not per se misleading or deceptive. A court evaluating a retailer checkout flow held that a conspicuous opt-out toggle was not deceptive because "many websites utilize similar toggle options, [so] a reasonable consumer was likely to understand that the toggle can be turned off." *Ramos v. EyeBuyDirect*, No. 25-CV-00539, 2025 WL 2633103, at *10 (C.D. Cal. Aug. 27, 2025). Plaintiffs do not allege that they encountered any opt-out toggle, that any toggle was inconspicuous, or that any lack of conspicuousness was caused by Route.

Plaintiffs further contend that "Route confusingly named the add on fee 'Shipping Protection' or 'Package Protection'", but they do not allege any facts that make it plausible that, even if Route selected those names, they were misleading. Compl. ¶ 68. Plaintiffs allege, generally, that online retailers' websites will sometimes advertise free or flat rate shipping.[6] *Id.* ¶ 2. Plaintiffs also allege that *those* representations, when made to consumers, are "false." *Id.* But neither Plaintiff alleges they have ever seen any representation by 7OHPLUS or Perfect Bar that their shipping was free or covered by a flat fee. *Id.* ¶¶ 39-46. Other than this one general allegation about online retailers, Plaintiffs do not allege anything misleading about the names "Shipping Protection" or "Package Protection." Indeed, Plaintiffs allege that Route provides services to its

[6] Retailers' "free shipping" statements are theirs—not Route's—and do not conflict with Route's distinct, optional protection against loss or damage. *See Ramos*, 2025 WL 2633103, at *8.

e-commerce retail customers. *Id.* ¶ 11. But, even if Plaintiffs had alleged a fact that made it plausible that "Shipping Protection" and/or "Package Protection" are deceptive, each Plaintiff admits that they never saw the description of Route's service. *Id.* ¶¶ 41, 45. Therefore, *these* Plaintiffs do not have any GBL claim based on the allegation that the description of Route's package protection service is deceptive.

Finally, Plaintiffs' allegation that reasonable consumers would not knowingly choose to pay for package protection is unsupported by any factual allegation. Compl. ¶¶ 3, 69. To the contrary, Plaintiffs allege that Route offers "various services" related to package protection—Route helps retailers protect their reputation by protecting consumer's retail purchases should something happen to them in transit, such as loss, theft, or damage. Compl. ¶¶ 11-12. A court has also found that Route's protection offers additional benefits beyond carrier policies. *Ramos*, 2025 WL 2633103, at *10.

Therefore, Plaintiffs do not plausibly allege any statement by Route that they saw misled them, or that any such statement could materially mislead a reasonable consumer. The Court should dismiss each of Plaintiffs' GBL claims.

### C. Plaintiffs' Unjust Enrichment Claim Fails.

#### 1. Plaintiffs' Unjust Enrichment Claims Are Duplicative of and Fail with Their GBL Claims.

To state an unjust enrichment claim under New York law, a plaintiff must allege that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) equity and good conscience require restitution. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). Unjust enrichment "is not a catchall cause of action to be used when others fail." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). Where an unjust enrichment claim rests on the same facts as a plaintiff's other failed claims, "an unjust enrichment claim cannot remedy the defects." *Id.* at

791.

Here, Plaintiffs' unjust enrichment claim rests entirely on the same alleged conduct as their deficient GBL §§ 349 and 350 claims and seeks the same relief. Compl. ¶¶ 59-79. As discussed above, because Plaintiffs' theory of deception fails as a matter of law, the duplicative unjust enrichment claim fails with it. *See, e.g.*, *Chimienti*, 698 F. Supp. 3d at 563 ("Plaintiff's unjust enrichment claim fails because it is based on the same set of facts as his GBL [§§ 349 and 350] claims."); *Morales v. SportsEngine, Inc.*, No. 24-CV-2971, 2025 WL 2662134, at *6 (S.D.N.Y. Sept. 17, 2025) (dismissing unjust enrichment claim that relied on the same allegations as dismissed GBL claims), *appeal withdrawn*, No. 25-2499, 2026 WL 105037 (2d Cir. Jan. 9, 2026); Melcher Decl. Ex. 6 at 4.

Plaintiffs' unjust enrichment theory fails for additional reasons. As discussed at length, the presentation of Route's services on the online retailers' websites was not Route's conduct. *See supra* Sections III.A.1, III.B.1. A plaintiff must also plead "a connection between the parties that [is] not too attenuated," one that "could have caused reliance or inducement." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517 (2012) (quoting *Mandarin Trading*, 16 N.Y.3d at 182-83); *see Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16 (2007) (insufficient connection between the purchaser of tires and the producers of chemicals used in the rubber-making process). Plaintiffs plead no such relationship with Route and Plaintiffs plead no facts to show that Route was responsible for the way the Route package protection fees were presented to them. *See Georgia Malone*, 19 N.Y.3d at 517-18 (relationship too attenuated where the parties "simply had no dealings with each other").

And Plaintiffs fail to allege that they did not retain the benefit of what they paid. Nor could they. They cannot now claim, after the fact, that the package protection was useless, not least

because Plaintiffs assert no facts to show that Route did not provide what it promised. *Sokoloff v. Town Sports Int'l Inc.*, 6 A.D.3d 185, 778 N.Y.S.2d 9 (2004) (no unjust enrichment where the plaintiff received what was paid for); *see also Ramos*, 2025 WL 2633103, at *10 ("[T]he Court agrees with EBD that 'Shipping Protection' likely provides additional protection not offered by general mail carriers.").

**2. The Nationwide Unjust Enrichment Class Claim Fails.**

Even if Plaintiffs' individual unjust enrichment claims survive under New York law (they should not), the Court should dismiss the claim asserted on behalf of a nationwide class. Plaintiffs seek to represent a single nationwide class of "[a]ll consumers who . . . paid a Shipping Protection fee or other similar fee for a service provided by Route." Compl. ¶ 47. Unjust enrichment is not uniform across jurisdictions; its elements vary materially from state to state, and a plaintiff asserting a nationwide claim governed by the law of many states must plead facts showing that the defendant's conduct satisfies each state's elements. Where a complaint fails to do so, courts routinely dismiss the nationwide claim under Rule 12(b)(6). *Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 247-48 (W.D.N.Y. 2021). The Complaint contains no state-by-state allegations at all, and that omission alone warrants dismissal of the nationwide claim.

The variation in state law is significant. California does not recognize unjust enrichment as an independent cause of action, so any California class member's claim fails regardless of what the Complaint alleges. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (applying California law); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003).

Unlike New York, other states require the plaintiff to plead that the defendant knew the benefit conferred was improper. Florida, for example, requires a showing that the defendant received the benefit and "has knowledge thereof" and that retention would be inequitable. *CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 359 (Fla. 3d Dist. Ct. App. 2022). Other

states additionally require wrongful conduct. And Texas limits unjust enrichment to situations where the defendant "obtain[ed] a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).[7]

Plaintiffs cannot meet either of these standards. As to knowledge, their assertion that Route was "aware" its conduct would deceive consumers rests entirely on information and belief, without supporting facts, Compl. ¶ 29, and conclusory allegations about a defendant's state of mind are insufficient at the pleading stage. *Iqbal*, 556 U.S. at 678-79. Nor can Plaintiffs supply the missing knowledge by pointing to conduct that is not Route's: a retailer's independent decision to adopt a default setting remains the retailer's choice. Plus, Shopify's unilateral policy change for merchants on its platform says nothing about what Route knew regarding any retailer's presentation of its own service. Compl. ¶ 20. Moreover, the Complaint alleges no fraud, duress, undue advantage, or comparable wrongful conduct by Route as to any class member's payment. Accordingly, the nationwide claim fails to the extent it arises under states that require such a showing.

Timeliness issues further complicate unjust-enrichment claims. Limitation periods range from two years in Texas (*Elledge v. Friberg-Cooper Water Supply Corp*., 240 S.W.3d 869, 870 (Tex. 2007)) to ten years under Louisiana law (*Dunbar v. Seger-Thomschitz*, 638 F. Supp. 2d 659, 663 (E.D. La. 2009)), with most states falling between three and six years. Some jurisdictions apply no statute of limitations at all, treating unjust enrichment as an equitable claim governed by laches. *See Reclaimant Corp. v. Deutsch*, 211 A.3d 976, 990-91 (Conn. 2019); *Dunn v. Rockwell*, 689 S.E.2d 255 at 258, 266-67 (W. Va. 2009). New York takes a fact-specific approach: courts look to the underlying conduct and whether the unjust-enrichment claim is properly pled in the

[7] For those states that require Plaintiffs to plead fraud or other similar conduct, Plaintiffs have not satisfied Rule 9(b).

alternative to contract or tort—here it is not, for reasons explained above—which can yield either a three- or six-year period. *Maya NY, LLC v. Hagler*, 965 N.Y.S.2d 475, 477 (App. Div. 1st Dep't 2013). There is also an Appellate Division split on whether the limitations period turns on the nature of the claim or the relief sought. *See Deutsche Bank AG v. Vik*, 40 N.Y.S.3d 23, 25 (App. Div. 1st Dep't 2016) (noting split between the First and Second Department and citing Second Department authority applying a three-year period when money damages are sought and six years when equitable relief is sought) (citing *Grynberg v. Eni S.p.A.*, No. 06 Civ. 6495, 2007 WL 2584727, at *3 (S.D.N.Y. Sept. 5, 2007)).

Taken together, these defects require dismissal of Plaintiffs' unjust enrichment claim on a nationwide basis. As to New York, the claim is duplicative and fails on that basis alone. As to every other state whose law might govern a putative class member's claim, Plaintiffs have not pleaded how their unjust enrichment claim can satisfy the unjust enrichment laws of every state. In the alternative, the Court should strike the nationwide class allegations under 12(f) to the extent they depend on a viable unjust enrichment claim, since no such claim has been, or can be, plausibly pleaded on a nationwide class basis.

### D. Alternatively, the Court Should Strike Paragraphs 33 through 38 of the Complaint, Including Plaintiffs' ROSCA and California Drip-Pricing References.

A movant prevails on a Rule 12(f) motion to strike factual allegations by showing that (1) no evidence supporting the allegations would be admissible, (2) the allegations have no bearing on the issues, and (3) permitting them to stand would prejudice the movant. *Crosby v. Stew Leonard's Yonkers LLC,* 695 F. Supp. 3d 551, 559 (S.D.N.Y. 2023). While motions to strike are disfavored and construed strictly, courts may prune pleadings with care by striking immaterial or prejudicial allegations while leaving the surrounding allegations intact, and the decision rests within the court's discretion. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893-94 (2d

Cir. 1976); *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, No. 03 Civ. 15, 2007 WL 1687044, at *3 (S.D.N.Y. June 11, 2007).

The Court should strike Paragraphs 33 through 38 of the Complaint, which appear under the heading "Route's Fees are Junk Fees and Violate Federal Guidance." First, no evidence supporting those allegations would be admissible to prove Plaintiffs' claims, because the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405, ("ROSCA") (which does not provide a private right of action), federal "junk fee" guidance, and California drip-pricing law supply no element of any cause of action Plaintiffs assert. A GBL § 349 or § 350 claim turns on the New York reasonable-consumer standard, not ROSCA's federal disclosure-and-consent regime, federal agency guidance, or California's CLRA. *See Himmelstein*, 37 N.Y.3d at 176 (the elements of a § 349 claim include whether defendant's actions are likely to mislead a reasonable consumer). These allegations also invoke legal standards—not mere factual background—that do not govern any claim pleaded in this action, which is precisely the kind of prejudicial surplusage Rule 12(f) is designed to remove.

Second**,** the allegations have no bearing on the issues: Plaintiffs plead no ROSCA, FTC Act, California drip-pricing, or CLRA claim and invoke those regimes only as rhetorical reinforcement. *See* Compl. ¶¶ 33-38. Third, allowing the references to stand would prejudice Route by inviting the factfinder to treat it as a violator of federal or California law on theories Plaintiffs cannot assert. Courts routinely strike such material. *Kent v. AVCO Corp.*, 815 F. Supp. 67, 71 (D. Conn. 1992) (striking allegations serving only to prejudice the defendant); *Shahzad v. Meyers*, No. 95 Civ. 6196, 1997 WL 47817, at *14 (S.D.N.Y. Feb. 6, 1997) (material that "serve[s] no purpose except to inflame the reader" may be stricken) (quoting *Morse v. Weingarten,* 777 F. Supp. 312, 319 (S.D.N.Y. 1991)). The Court should strike Paragraphs 33 through 38.

Independently, ROSCA's negative-option provisions apply only to a "person" who "charge[s] or attempt[s] to charge any consumer" for goods or services sold through a negative option feature. 15 U.S.C. § 8403. Nowhere in the Complaint do Plaintiffs allege that Route App obtains consumer billing information—they plead only that the service was added to their carts on retailers' own checkout pages. *See* Compl. ¶¶ 23-24, 39-46. Plaintiffs do not even attempt to plead that Route App is a party to any transaction online. Nor could they, because Route App *does not transact directly with consumers*. That omission independently defeats any suggestion that ROSCA reaches Route's conduct.

## IV. CONCLUSION

For the foregoing reasons, Route respectfully requests that the Court dismiss the Complaint in its entirety with prejudice[8], and, in the alternative, strike the nationwide class allegations and Paragraphs 33 through 38.

---

[8] Although certain evidence (Melcher Decl. ¶¶ 2-6, Exs. 1-5 and the Casper Decl.) is not properly considered on a Rule 12(b)(6) motion, they may be considered on a Rule 12(b)(1) factual challenge to standing, and they confirm that any amendment would be futile. The evidence shows each retailer controls how the package protection is presented, which varies materially from website to website. That is a substantive defect, not a pleading one: the challenged conduct is the retailers', not Route's, and Plaintiffs cannot allege otherwise. Leave to amend may be denied where "the problem with [the] causes of action is substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Dismissal with prejudice is therefore warranted.

Dated: October 7, 2026

Respectfully submitted,

By: /s/ *Molly R. Melcher*

MOLLY R. MELCHER *(admitted pro hac vice)*
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350
Email: mmelcher@fenwick.com

*Attorneys for Defendant Route App. Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 7, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docket.

Date: October 7, 2026

*/s/ Molly R. Melcher*
Molly R. Melcher